UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IP CUBE PARTNERS CO., LTD.,

    Plaintiff,

  -v-                                                               No.  15 CV 6334-LTS

TELECOMMUNICATION SYSTEMS, INC.,

    Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

This case arises out of a patent purchase agreement that the Plaintiff, IP Cube Partners Co., Ltd. ("IP Cube"), alleges contained material misrepresentations and omissions attributable to the Defendant, Telecommunication Systems, Inc. ("TCS").  Before the Court is a motion by Defendant TCS to dismiss Counts Three (fraud) and Four (negligent misrepresentation) of IP Cube's Complaint (docket entry no. 1), and additionally to strike certain portions of the Complaint that allegedly refer to confidential settlement discussions.  The Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1332, and personal jurisdiction is not contested.  The Court has considered carefully the parties' submissions and, for the following reasons, the motion to dismiss Counts Three and Four is granted, and the motion to strike is granted as to paragraphs 36 through 39 of the Complaint.

## BACKGROUND

The following summary of the facts relevant to the instant motion practice is drawn from the allegations in the Complaint, which are taken as true for the purposes of this

motion. In 2009, TCS acquired two patents (Nos. 7,142,205 and 7,439,969) from third-party AutoDesk, Inc. ("AutoDesk"). (Complaint ¶¶ 15-16.) Prior to this transaction, AutoDesk had entered into a cross-licensing agreement (the "Cross-License") with another third party (the "Cross-Licensee") that included the two patents TCS acquired. (Id. ¶ 25.) IP Cube alleges, on information and belief, that TCS conducted due diligence prior to its transaction with AutoDesk, and (also alleged on information and belief) was therefore aware of the Cross-License. (Id. ¶ 16.)

In approximately October 2012, TCS and IP Cube entered into a Non-Disclosure Agreement ("NDA") in the course of negotiating a patent purchase transaction. (Complaint ¶ 10.) The NDA provided that the parties sought to exchange confidential information, including agreements through which the two patents were acquired. (Id. ¶ 11.) In or around December 2012, IP Cube purchased the two patents from TCS pursuant to a Patent Purchase Agreement (the "Agreement"). (Id. ¶ 14.) In the course of negotiating the Agreement, the chief negotiator for TCS allegedly made representations and warranties to IP Cube's negotiator that the two patents were free of encumbrances and restrictions, other than a bank loan that was released when the transaction closed, and that no licenses of the two patents had been granted. (Id. ¶¶ 17-18.) IP Cube does not allege that TCS made these representations and warranties in the text of the Agreement, but states that IP Cube relied on the representations in deciding to enter into the Agreement. (Id. ¶ 19.) The transaction closed on December 27, 2012, and IP Cube was recorded as the new owner of record of the two patents with the United States Patent Office. (Id. ¶¶ 20-21.)

In 2013, IP Cube began negotiations with an unnamed third-party (the "Buyer") to sell the two patents IP Cube had acquired from TCS. (Complaint ¶ 22.) After reaching an

agreement in principle, IP Cube and the Buyer discovered the existence of the Cross-License entered into by AutoDesk.  (Id. ¶ 25.)  IP Cube contacted TCS about the Cross-License; TCS denied any knowledge of the Cross-License, but eventually confirmed that it existed.  (Id. ¶ 26.)  IP Cube then conducted additional due diligence on the two patents and discovered two additional licenses (the "Additional Cross-Licenses") that covered the two patents.  (Id. ¶ 28.)  IP Cube does not state whether the Additional Cross-Licenses were granted by TCS, AutoDesk, or another prior owner of the patents, but alleges that TCS knew or should have known of their existence at the time of the Agreement.  (Id. ¶¶ 29-30.)  Because of these cross-licenses, IP Cube and the Buyer re-negotiated their purchase agreement and ultimately entered into a transaction at a significantly reduced purchase price.  (Id. ¶ 32.)  IP Cube thereafter commenced this litigation, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation by TCS.  TCS has moved to dismiss the fraud and negligent misrepresentation claims only.

In the Complaint, IP Cube makes certain factual allegations relating to its damages, a demand letter it sent TCS in December 2013 relating to the instant claims, and a settlement negotiation process between IP Cube and TCS that proceeded throughout 2014 and 2015. (Complaint ¶¶ 35-39.)  These factual allegations are the subject of TCS' motion to strike.

DISCUSSION

The Motion to Dismiss

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This requirement is satisfied when the factual content in the complaint "allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. 544, 556 (2007)). A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Twombly, 550 U.S. at 555, 557. The Court accepts as true the non-conclusory factual allegations in the complaint and draws all inferences in the Plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Because the two claims at issue sound in fraud, Rule 9(b) requires that the allegations be stated with particularity. Fed R. Civ. P. 9(b). To satisfy the particularity requirement of Rule 9(b), the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal quotation marks and citation omitted). "Rule 9(b) pleadings cannot be based upon information and belief." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004) ("Although it is true that matters peculiarly within a defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all."). To sufficiently allege scienter, the plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

An essential element of both fraud and negligent misrepresentation is that the defendant knew or should have known that its statements were false at the time they were made. See Childers v. N.Y. and Presbyterian Hospital, 36 F. Supp. 3d 292, 309 (S.D.N.Y. 2014) (elements of fraud); Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011)

(elements of negligent misrepresentation).  Here, the core factual proposition underlying IP Cube's fraud and negligent misrepresentation allegations -- that TCS knew or had reason to know of the Cross-License prior to entering into its transaction with IP Cube based on due diligence TCS conducted prior to its transaction with AutoDesk -- is pleaded solely on information and belief.  The conclusory allegations in the Complaint are insufficient to satisfy the Twombly and Rule 9(b) requirements of facts that demonstrate that there is a non-speculative basis to believe that TCS knew or had reason to know of the Cross-License prior to making its alleged representations and warranties.

First, IP Cube does not provide the "strong circumstantial evidence" from which this Court may infer that TCS had fraudulent intent when it made representations regarding the lack of encumbrances on the patents at issue.  Woods v. Maytag Co., 807 F. Supp. 2d 112, 122 (E.D.N.Y. 2011).  IP Cube relies on Woods to argue that TCS made its representations with the "pretense of knowledge," and cannot now "escape responsibility through plea of lack of personal knowledge of the truth of declarations made."  Id. (quoting Sgarlata v. Carioto, 201 N.Y.S.2d 384, 385 (N.Y. City Ct. 1960)).  In Woods, a salesman made a representation about the safety of an oven that turned out to be false, and tried to avoid liability for that representation by claiming a lack of actual knowledge about the oven's safety.  Id.  The court held that the Woods plaintiff sufficiently alleged that the "representative either knew his representation was false, or assumed a pretense of knowledge" sufficient to "constitute strong circumstantial evidence of scienter" that satisfied Rule 9(b).  Id. at 123.

The opinion in Woods relied principally on DiRose v. PK Management Corp., 691 F.2d 628 (2d Cir. 1982), for this proposition.  In DiRose, the Second Circuit reaffirmed the principle that "a defendant may be guilty of fraudulent misrepresentation for making a false

statement without knowing it to be false, if he made it recklessly with the pretense of knowledge that it was true when in fact he knew that he had no such knowledge." Id. at 632. In such cases, a successful claim of fraud requires that "the speaker must know that he has no knowledge on the subject concerning which he speaks." Id.

In both Woods and DiRose, there was actionable fraud not simply because the statement was untrue, but rather because the speaker claimed to have knowledge that he did not actually have, fraudulently conveying the appearance of knowledge. This is not what IP Cube alleges here; indeed, it is the opposite of IP Cube's theory. IP Cube alleges that TCS knew about the Cross-License, based on the due diligence TCS conducted during the AutoDesk transaction, but concealed that fact. What was allegedly concealed was not TCS' ignorance of the Cross-License, but its knowledge of the Cross-License: IP Cube does not allege that TCS recklessly assumed that the representations it made were true, but rather that TCS had reason to know that its representations were false. To substantiate such a claim, IP Cube must allege facts that give rise to a plausible inference that TCS did in fact have reason to know of that falsity. IP Cube cannot argue, as in Woods and DiRose, that TCS was concealing a lack of knowledge about the Cross-License when IP Cube's allegations are premised on TCS having known about the Cross-License.

Merely identifying a false statement, and alleging generally that a defendant had reason to know the statement was false, is not sufficient to allege scienter with the particularity required by Rule 9(b). Rather, "[a]n ample factual basis must be supplied to support the charges" of fraud. O'Brien v. Nat'l Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991). In O'Brien, the Second Circuit held that general allegations that an auditor knew about a partnership's impending financial difficulties, yet continued to assert that the partnership's

financial projections were reasonable, did not support a cause of action for fraud because "plaintiffs fail[ed] to allege particulars regarding [defendant's] purported discovery" of the impending difficulties.  Id. at 677.  Similarly, here, IP Cube must allege particular facts that support an inference that TCS knew about the Cross-License, and therefore intended to mislead IP Cube.  Without any factual support for its allegation that TCS knew about the Cross-License when it made the representations at issue, IP Cube rests its claim on impermissible "naked assertions," and therefore has not stated a claim for fraud or negligent misrepresentation.  Twombly, 550 U.S. at 555.

>Additionally, as an independent reason supporting dismissal of IP Cube's claim for negligent misrepresentation, the Complaint does not sufficiently allege facts that support the existence of a duty owed by TCS to IP Cube, as required to support this tort.  Under New York law, a party must have a "duty to speak with care" to be susceptible to a claim of negligent misrepresentation, and "not all representations made by a seller of goods or a provider of services will give rise to a duty to speak with care" in the ordinary commercial context.  Kimmell v. Schaefer, 89 N.Y.2d 257, 263 (1996).  Rather, "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."  Id.  The record before the Court shows this to be an ordinary commercial transaction between sophisticated parties, under circumstances that do not indicate that TCS had any unique or specialized expertise on the matter at hand.  IP Cube's reliance on a non-disclosure agreement between the parties does not alter this analysis; such agreements are not unusual in transactions that may involve trade secrets.  The case on which IP Cube principally relies in support of its arguments, HealthNow New York, Inc. v. APS

Healthcare Bethesda, Inc., 2006 WL 659518 (N.D.N.Y. Mar. 10, 2006), involved a seller with actual knowledge of its own proprietary fee schedules that misrepresented that proprietary information to a prospective buyer.  Id. at *1.  Here, as discussed above, IP Cube has not proffered facts that make plausible its allegations that TCS had actual knowledge of the Cross-License prior to the Agreement.  Nor does IP Cube present the NDA or the Agreement as being anything other than ordinary commercial transactions, which do not implicate "a special relationship of trust or confidence . . . between the parties" that would indicate the existence of the necessary duty.  Kimmell, 89 N.Y.2d at 264.  Absent such a showing, IP Cube has failed to state a claim for negligent misrepresentation.

The Motion to Strike

Federal Rule of Evidence 408 renders inadmissable certain aspects of settlement discussions between the parties.  Specifically, Rule 408 renders inadmissable "to prove or disprove the validity or amount of a disputed claim" evidence of "furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim," as well as, in civil cases, "conduct or a statement made during compromise negotiations about the claim."  The inclusion in a pleading of those aspects of settlement discussions may be striken as immaterial and potentially prejudicial pursuant to Federal Rule of Civil Procedure 12(f).  See Kelly v. L.L. Cool J., 145 F.R.D. 32, 39-40 (S.D.N.Y. 1992).

As an initial matter, IP Cube is correct that paragraph 35 of the Complaint does not relate to settlement discussions, but merely sets out IP Cube's theory of its damages.  The motion to strike this paragraph is denied.

However, as to paragraphs 36 through 39 of the Complaint, the material in question does relate to conduct in the course of settlement negotiations, and will be stricken as immaterial and potentially prejudicial.  Nothing in the post-contractual communications discussed in these paragraphs is relevant or material to a determination about TCS' liability for breach of conduct (or fraud or negligent misrepresentation).  The sole case IP Cube relies upon in opposition to TCS' motion to strike involved a defendant who "admitted liability and the amount of that liability," rendering the validity and amount of the claim not in dispute.  <u>Lehman Bros. Commercial Corp. v. China Int'l United Petroleum and Chemicals Co., Ltd.</u>, 1995 WL 380106, at *3 (S.D.N.Y. June 26, 1995).  That is not the case here, where by IP Cube's own admission, "IP Cube was left empty-handed, <u>with TCS's breach and liability unresolved</u>" after the settlement discussions.  (Complaint ¶ 39 (emphasis added).)  The details of IP Cube and TCS' negotiations to resolve the unresolved question of TCS' liability therefore fall under Rule 408 and are subject to the strong public policy precluding consideration of such material when determining liability.  Accordingly, the factual allegations of TCS and IP Cube's pre-litigation efforts to resolve these claims related in paragraphs 36 through 39 are stricken from the Complaint as immaterial and potentially prejudicial.

## CONCLUSION

For the foregoing reasons, TCS' motion to dismiss Counts Three and Four of the Complaint is granted, and TCS' motion to strike is granted as to paragraphs 36 through 39 of the Complaint.  IP Cube may file a motion for leave to amend the Complaint to provide additional factual allegations relating to its dismissed claims for fraud and negligent misrepresentation by **July 4, 2016**.  This case remains referred to Magistrate Judge Ronald L. Ellis for general pre-

trial management.

SO ORDERED.

Dated: New York, New York
June 13, 2016

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge